## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 20 2019, 6:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joseph P. Hunter
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tiffany A. McCoy
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jacob R. Weaver,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

November 20, 2019

Court of Appeals Case No.
19A-CR-1054

Appeal from the Delaware Circuit Court

The Honorable Marianne L. Vorhees, Judge

Trial Court Cause No.
18C01-1810-F5-167

**Altice, Judge.**

## Case Summary

[1] Following a bench trial, Jacob R. Weaver was convicted of Level 5 felony domestic battery and Class A misdemeanor resisting law enforcement. He challenges only his battery conviction on appeal, seeking application of the incredible dubiosity rule to establish insufficiency of the evidence.

[2] We affirm.

## Facts & Procedural History

[3] Weaver and Kelci Gilliam dated off and on for many years and had previously lived together. At the time in question, however, Gilliam was living in a home with her mother and maternal grandparents.

[4] After midnight on June 25, 2018, Weaver was outside Gilliam's residence repeatedly calling her through Facebook Messenger. She did not answer several calls and then responded to him with a text message telling him to leave her alone. Weaver called several more times and sent her a text message demanding that she answer the phone. After she had not answered his calls for five minutes, he wrote her: "Are u stupid Come to the goddamnd [sic] wibdow [sic]." *Exhibits* at 15. He called many more times and sent angry messages for another ten minutes or so.

[5] Eventually, Gilliam went outside and spoke with him near her front yard. Weaver was "really mad" and a verbal argument quickly ensued between the two. *Transcript* at 53. Gilliam's mother heard the argument and looked out the window. Weaver proceeded to headbutt Gilliam, which caused her pain.

Gilliam responded by throwing a makeup container at Weaver, striking him in the face and breaking his glasses. Weaver then grabbed Gilliam by the hair and started pulling her down the road. He let go of Gilliam when a neighbor came outside and confronted him.

[6] In the meantime, Gilliam's mother, Angela, had called 911 after seeing Weaver headbutt Gilliam. Among other things, Angela reported to the dispatcher, "my daughter's ex-boyfriend is chasing her down the road and threatening her and doing whatever he can to her." *Id*. at 79. The dispatcher asked, "Did he hit her?", and Angela responded affirmatively. *Id*. at 80. Angela remained on the phone with the dispatcher until the police arrived. Midway through the call Gilliam made it back to the house, and the family locked themselves inside.

[7] Muncie Police Officers Bryan Ashton and Jacob Woods responded to the dispatch, which came at 1:20 a.m. Upon arriving in the area, they observed a man, later identified as Weaver, standing in the street just north of Gilliam's residence. Weaver fled north into an alley when Officer Ashton activated the emergency lights on their marked police vehicle. Officer Ashton then chased Weaver on foot, as Officer Woods drove around the block. Weaver was caught trying to crawl under a parked vehicle.

[8] After Weaver was apprehended, Officer Ashton went to speak with Gilliam, who was crying, upset, and seemed scared. She complained of pain to her forehead, though Officer Ashton could see no visible injuries. Weaver, however, had visible injuries to his nose and forehead.

On October 8, 2018, the State charged Weaver with domestic battery, resisting law enforcement, and criminal trespass, all as Class A misdemeanors. The State also filed a notice of intent to seek enhancement of the battery to a Level 5 felony based on a prior conviction for battery against Gilliam. Following a bench trial on April 4, 2019, Weaver was convicted of Level 5 felony domestic battery and Class A misdemeanor resisting law enforcement. On May 6, 2019, the trial court sentenced him to an aggregate sentence of four years in prison. On appeal, Weaver challenges only his conviction for domestic battery.

## Discussion & Decision

Likely aware that under the general sufficiency standard of review he would lose on appeal, Weaver frames his argument in terms of the incredible dubiosity rule. However, he does not appear to understand the extremely limited application of this rule.

> The incredible dubiosity rule allows the court to impinge upon the [trier of fact's] assessment of witness credibility when the testimony at trial is so contradictory that the verdict reached would be inherently improbable. For the incredible dubiosity rule to apply, the evidence presented must be so unbelievable, incredible, or improbable that no reasonable person could ever reach a guilty verdict based upon that evidence alone.

*Moore v. State*, 27 N.E.3d 749, 751 (Ind. 2015). Further, the witness's testimony must be wholly uncorroborated. That is, we will only impinge on the trier of fact's duty to judge witness credibility "where a *sole witness* presents inherently contradictory testimony which is equivocal or the result of coercion and there is

a *complete lack of circumstantial evidence* of the appellant's guilt." *Id*. at 755 (emphases in original) (quoting *Tillman v. State*, 642 N.E.2d 221, 223 (Ind. 1994)).

[11] The incredible dubiosity rule is inapplicable here for several reasons. First, there were two eyewitnesses to the battery, the victim and her mother, and both testified at trial. Second, Gilliam's testimony was not inherently contradictory, equivocal, or the result of coercion. She unequivocally testified that Weaver headbutted her and pulled her down the road by her hair until confronted by a neighbor.[1] Further, corroborating evidence included Gilliam's mother's testimony, the 911 recording, and the responding officers' observations at the scene, including Weaver's flight, his visible facial injuries, and Gilliam's demeanor. Also admitted into evidence were the angry text messages sent and repeated calls made by Weaver to Gilliam just before the battery. The evidence is amply persuasive of Weaver's guilt and comprises more than substantial evidence to support the convictions. Accordingly, he may not receive relief under the incredible dubiosity rule. *See Tillman*, 642 N.E.2d at 223.

[12] Judgment affirmed.

Brown, J. and Tavitas, J., concur.

---

[1] The minor inconsistencies noted by Weaver – regarding the length of their relationship and why she went outside – are not relevant in terms of the incredible dubiosity rule, nor is the fact that Gilliam did not have visible injuries immediately after the battery.